**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA**

**ERROL J. BOURGEOIS, et al.**                    **CIVIL ACTION**

**VERSUS**                                        **NO. 25-526**

**HUNTINGTON INGALLS INCORPORATED, et al.**       **SECTION: "G"(5)**

## ORDER AND REASONS

Before the Court are two motions for partial summary judgment filed by Defendant Liberty Mutual Insurance Company's ("Liberty"), as the alleged insurer of Hopeman Brothers, Inc. ("Hopeman").[1] In this litigation, Plaintiffs Errol J. Bourgeois, Sr. and Mary Anne Bourgeois Richardson's ("Plaintiffs") allege Decedent Emanuel J. Bourgeois ("Decedent"), while an employee for Huntington Ingalls Incorporated ("Avondale"),[2] was exposed to asbestos and asbestos-containing products manufactured, distributed, sold, and/or handled by Avondale and other parties.[3] Plaintiffs allege this exposure caused and/or contributed to Decedent's development of mesothelioma and, ultimately, his death.[4]

Liberty moves for summary judgment on four issues: (1) Hopeman is not liable for an intentional tort; (2) Hopeman is not liable for fraud; (3) Hopeman is not an alter ego of Wayne Manufacturing Corporation ("Wayne"); and (4) Hopeman was not a manufacturer of asbestos-

---

[1] Rec. Docs. 257, 261.

[2] Huntington Ingalls, Inc. was formerly known as: Northrop Grumman Shipbuilding, Inc., Northrop Grumman Ship Systems, Inc., Avondale Industries, Inc., Avondale Shipyard Inc., and Avondale Marine Ways, Inc.

[3] Rec. Doc. 13.

[4] *Id.*

containing products.[5] Plaintiffs oppose the motions.[6] Having considered the motions, the memoranda in support and opposition, the record, and the applicable law, the Court grants both motions.

## I. Background

On February 14, 2025, Plaintiffs filed a petition against Avondale, Sparta Insurance Company, Travelers Indemnity Company, and Certain Underwriters at Lloyd's, London in the Civil District Court for the Parish of Orleans.[7] On March 17, 2025, Avondale removed the case to this Court.[8] On April 9, 2025, Plaintiffs filed a First Supplemental and Amending Complaint adding Bayer CropScience, Inc., Eagle, Inc., Foster-Wheeler LLC, General Electric Company, Taylor-Seidenbach, Inc., The McCarty Corporation, Paramount Global, Uniroyal, Inc., International Paper Company, and American Insurance Company as Defendants.[9] On May 19, 2025, Plaintiffs filed a Second Supplemental and Amending Complaint adding Liberty, as the alleged insurer of Hopeman, as a Defendant.[10] Avondale has also filed crossclaims and a Third-Party Complaint naming numerous additional third-party defendants, including Liberty, as the alleged insurer of Wayne.[11]

---

[5] Rec. Docs. 257, 261.

[6] Rec. Doc. 286.

[7] Rec. Doc. 1-2.

[8] Rec. Doc. 1.

[9] Rec. Doc. 13. Plaintiffs' claims against International Paper Company were dismissed with prejudice on December 18, 2025. Rec. Doc. 144.

[10] Rec. Doc. 77.

[11] Rec. Docs. 4, 43, 86.

The Amended Complaint alleges that Decedent was employed by Avondale between 1963 and 2005, and during his employment he was allegedly exposed to asbestos.[12] The Amended Complaint alleges that Decedent was also exposed to asbestos through contact with his family members who were employed at Avondale.[13] The Amended Complaint states that these exposures caused and/or contributed to Decedent's development of mesothelioma and other related ill health effects, and ultimately his death.[14] The Amended Complaint states that Decedent was first diagnosed with cancer on approximately October 31, 2024, and the diagnosis was confirmed as mesothelioma on November 13, 2024.[15] The Amended Complaint states that Decedent died on November 12, 2024, as a result of the mesothelioma and complications therefrom.[16] The Amended Complaint states that Decedent was survived by his siblings, Errol Bourgeois and Mary Anne Bourgeois Richardson.[17]

On June 9, 2026, Liberty filed the instant Motions for Partial Summary Judgment.[18] On June 16, 2026, Plaintiffs opposed the motions.[19]

---

[12] Rec. Doc. 13 at 2.

[13] *Id.*

[14] *Id.*

[15] *Id.* at 5.

[16] *Id.*

[17] *Id.*

[18] Rec. Docs. 257, 261.

[19] Rec. Doc. 272.

## II. Parties Arguments

### A.    *Liberty's Arguments in Support of the Motions*

Liberty moves for summary judgment on four issues: (1) Hopeman is not liable for an intentional tort; (2) Hopeman is not liable for fraud; (3) Hopeman is not an alter ego of Wayne; and (4) Hopeman was not a manufacturer of asbestos-containing products.[20]

First, Liberty argues that summary judgment is appropriate on the issue of intent because Hopeman did not: (1) have a conscious desire to inflict Decedent with mesothelioma; or (2) know with substantial certainty that Decedent would contract mesothelioma because of exposure to Hopeman's operations.[21]

Second, Liberty asserts that Hopeman cannot be held liable for fraud or concealment because Hopeman did not: (1) tell Decedent that asbestos was safe or suppress information from him; or (2) make such a statement or omission with the intent to gain an unjust advantage over, or harm, Decedent.[22]

Third, Liberty argues that Plaintiffs have failed to put forth any evidence that Hopeman and Wayne are alter egos.[23] Liberty submits that Hopeman and Wayne are separate corporations, and they were incorporated at different times, in different states, and for completely different business purposes.[24] According to Liberty, the corporations are distinct legal entities because: (1) Hopeman was, and remains, properly incorporated; (2) Hopeman was a profitable business both

---

[20] Rec. Docs. 257, 261.

[21] Rec. Doc. 257-2 at 4–8.

[22] *Id.* at 8–9.

[23] *Id.* at 9.

[24] *Id.* at 12.

4

before and after the dissolution of Wayne; (3) Wayne and Hopeman maintained separate checking

accounts as well as a separate accounting thereof; (4) Hopeman has always separately filed its tax

returns; and (5) customers always knew they were dealing with separate corporate entities.[25]

Fourth, Liberty contends there is no evidence that Hopeman was a manufacturer of

asbestos-containing products.[26] Liberty cites numerous cases finding that Hopeman was not a

manufacturer of asbestos-containing products.[27] Liberty argues that the Louisiana Products

Liability Act ("LPLA") should not apply to this case because it was enacted after the asbestos-

exposure at issue in this case.[28] Liberty submits that Hopeman was directed to install asbestos-

containing wallboard by the relevant specifications and Hopeman followed those specifications.[29]

Liberty asserts these actions do not make Hopeman a manufacturer.[30]

**B.    *Plaintiffs' Arguments in Opposition to the Motions***

Plaintiffs oppose summary judgment on all four issues.[31] First, Plaintiffs assert that

summary judgment must be denied on the intentional tort claims.[32] Plaintiffs submit Hopeman

knew of the hazards of asbestos and precautionary measures that should have been taken years

---

[25] *Id.* at 13–14.

[26] Rec. Doc. 261-2 at 4.

[27] *Id.* at 4–5.

[28] *Id.* at 5.

[29] *Id.* at 6.

[30] *Id.*

[31] Rec. Doc. 245.

[32] *Id.* at 16–24.

before Decedent's exposure.[33] Despite having this knowledge, Plaintiffs contend Hopeman nevertheless took steps to conceal warnings regarding the hazards of asbestos from workers.[34] Furthermore, Plaintiffs assert that Decedent was exposed to asbestos from Hopeman and Wayne's wallboards at Avondale without any safety precautions being taken, and with warnings being suppressed by Hopeman.[35]

Second, Plaintiffs contend that Hopeman committed fraud because it was aware of the hazards of asbestos and the precautionary measures that should have been taken, but Hopeman chose to remain silent and failed to institute necessary precautionary measures.[36]

Third, Plaintiffs argue Hopeman is an alter ego of Wayne.[37] Plaintiffs contend Wayne was a wholly owned subsidiary of Hopeman during the relevant time period, there was duplication of officers between Hopeman and Wayne, most of Wayne's assets were transferred to another wholly owned subsidiary of Hopeman when Wayne was liquidated, Hopeman supplied micarta and marinite to Wayne so that Wayne could glue the boards together, and Hopeman directed Wayne to remove warning labels from the marinite during the gluing process.[38]

Fourth, Plaintiffs contend that Hopeman and Wayne incorporated asbestos-containing micarta and marinite into a new wallboard product that was then further modified by Hopeman

---

[33] *Id.* at 19.

[34] *Id.* at 20.

[35] *Id.*

[36] *Id.* at 24–25.

[37] *Id.* at 3–6.

[38] *Id.* at 4–5.

and incorporated into vessels being constructed at Avondale as component parts of those vessels.[39] As such, Plaintiffs argue Hopeman is liable as a manufacturer of asbestos-containing products.[40]

### III. Legal Standard

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[41] The court must view the evidence in the light most favorable to the nonmovant.[42] Initially, the movant bears the burden of presenting the basis for the motion; that is, the absence of a genuine issue as to any material fact or facts.[43] The burden then shifts to the nonmovant to come forward with specific facts showing there is a genuine dispute.[44] "A dispute about a material fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[45]

### IV. Analysis

#### A. *Intentional Tort Claims*

Liberty, as the alleged insurer of Hopeman, moves for summary judgment on Plaintiffs' intentional tort claims. As an initial matter, the Court notes that generally, summary judgment is

---

[39] *Id.* at 12.

[40] *Id.*

[41] Fed. R. Civ. P. 56(a).

[42] *Coleman v. Houston Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997).

[43] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[44] *See* Fed. R. Civ. P. 56(c); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

[45] *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 956 (5th Cir. 1993) (internal citation omitted).

disfavored when issues of intent or state of mind are involved because those determinations are inherently a question of fact which turns on credibility.[46] However, a court is not precluded from granting summary judgment where elusive concepts such as motive or intent are at issue.[47] The Fifth Circuit has cautioned that "the court must be vigilant to draw *every* reasonable inference from the evidence in the record in a light most flattering to the nonmoving party."[48] For example, summary judgment may still be appropriate when intent or state of mind is at issue if the non-moving party merely rests on conclusory allegations or unsupported speculation.[49]

To prove that a defendant committed an intentional tort under Louisiana law, a plaintiff must show that a defendant either: "'(1) consciously desires the physical result of his act, whatever the likelihood of that result happening from his conduct; or (2) knows that the result is substantially certain to follow from his conduct, whatever his desire may be as to that result.'"[50] "Thus, intent has reference to the consequences of an act rather than to the act itself."[51] Therefore, Plaintiffs must prove that Hopeman either consciously desired that Decedent would contract mesothelioma, or knew that result was "substantially certain to follow from [Hopeman's] conduct."[52] Plaintiffs

---

[46] *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1265–66 (5th Cir. 1991) ("When state of mind is an essential element of the nonmoving party's claim, it is less fashionable to grant summary judgment because a party's state of mind is inherently a question of fact which turns on credibility.").

[47] *Id*. at 1266 ("This is not to say that the court can never enter summary judgment when intent or state of mind is at issue, only that the court must recognize that undermining the moving party's professed state of mind is not a simple task. Therefore, the court must be vigilant to draw *every* reasonable inference from the evidence in the record in a light most flattering to the nonmoving party.").

[48] *Id*.

[49] *Id*. (internal citation omitted).

[50] *Reeves v. Structural Pres. Sys.*, 98-1795 (La. 3/12/99), 731 So. 2d 208, 211 (quoting *Bazley v. Tortorich*, 397 So. 2d 475, 481 (La. 1981)).

[51] *Bazley*, 397 So. 2d at 481.

[52] *Zimko v. Am. Cyanamid*, 2003-0658 (La. App. 4 Cir. 6/8/05); 905 So. 2d 465, 475, *writ denied*, 2005-2102

do not address the first prong, but instead argue that Hopeman knew of the hazards of asbestos and were substantially certain that disease would occur.

Substantial certainty "requires more than a reasonable probability that an injury will occur."[53] To satisfy the criterion of "substantial certainty," Plaintiffs must prove that Decedent's contracting mesothelioma was "inevitable or incapable of failing."[54] "[M]ere knowledge and appreciation of a risk does not constitute intent, nor does reckless or wanton conduct."[55] The "belie[f] that someone may, or even probably will, eventually get hurt if a workplace practice is continued does not rise to the level of intentional tort, but instead falls within the range of negligent acts. . . ."[56] To prove a claim for intentional tort, Plaintiffs would have to show that Hopeman's "conduct [went] beyond knowingly permitting a hazardous work condition to exist, ordering an employee to perform an extremely dangerous job, or willfully failing to furnish a safe place to work. . . ."[57]

Several judges in this District have considered intentional tort claims against Avondale arising out of asbestos exposure.[58] In *Vedros v. Northop Grumman Shipbuilding, Inc.*, the plaintiffs argued that Avondale had awareness of the risks associated with asbestos as well as unsafe working

---

(La. 3/17/06), 925 So. 2d 538 (internal citations omitted).

[53] *Reeves*, 731 So. 2d at 213 (internal citations omitted).

[54] *Id.* (internal citations omitted).

[55] *Id*. (internal citations omitted).

[56] *Id*. at 212.

[57] *Zimko*, 905 So. 2d at 477 (internal citations omitted).

[58] *Legendre v. Louisiana Ins. Guar. Ass'n*, No. 22-1767, 2024 WL 1556842 (E.D. La. Apr. 10, 2024); *Becnel v. Lamorak Ins. Co.*, No. CV 19-14536, 2022 WL 3665085 (E.D. La. Aug. 25, 2022); *Cortez v. Lamorak Ins. Co.*, 597 F. Supp. 3d 959 (E.D. La. Apr. 4, 2022); *Vedros v. Northop Grumman Shipbuilding, Inc.*, No. 11-1198, 2014 WL 906164 (E.D. La. Mar. 7, 2014).

conditions, and despite this knowledge, Avondale did not remedy those conditions.[59] The district judge granted summary judgment and found that "[e]ven considering the facts in the light most favorable to Plaintiffs and assuming that Defendants were aware that there was a major risk, or even a probability, that [the decedent] would contract mesothelioma," the plaintiffs did not provide evidence that would allow a reasonable jury to determine "that [the decedent's] contracting mesothelioma was 'inevitable or incapable of failing' and was thus substantially certain to result from" Avondale's conduct.[60] Similarly in *Cortez*, the district judge found that the plaintiff's general assertions that Avondale "knew that asbestos was a health hazard," that asbestos "caused fatal lung disease," and that Avondale "had problems with it . . . falls short of what is necessary to raise a material issue for an intentional-tort claim."[61] Likewise in *Becnel*, the district court held that "even assuming the defendants were aware that the alleged asbestos from their respective products was dangerous, and they should have used precautionary measures," plaintiffs failed to meet their evidentiary burden "whereby a reasonable juror could conclude that [the plaintiff's] primary lung cancer was 'inevitable or incapable of failing.'"[62]

In *Dempster v. Lamorak Insurance Co.*, this Court denied Avondale's motion for reconsideration of a prior state court order denying summary judgment on this issue.[63] The Court noted that Avondale had not presented any newly discovered or previously unavailable evidence,

---

[59] *Vedros*, 2014 WL 906164 at *3.

[60] *Id.*

[61] 597 F.Supp.3d at 977.

[62] *Becnel*, 2022 WL 3665085 at *4.

[63] *Dempster v. Lamorak Ins. Co.*, No. 20-95, 2020 WL 3892810 (E.D. La. July 10, 2020).

10

nor did Avondale identify a change of law that would warrant granting the motion.[64] In *Constanza v. Sparta Insurance Co.*, this Court found its prior decision in *Dempster* distinguishable because the Court was considering the motion for partial summary judgment for the first time, not on a motion for reconsideration of any earlier decision made in state court.[65] The Court concluded that Liberty was entitled to summary judgment because Plaintiffs did not present any evidence to show that Hopeman consciously intended to harm the decedent or that his mesothelioma was "inevitable or incapable of failing."[66]

The Court finds that the evidence Plaintiffs present in this case falls below the bar of what is needed to raise a material issue for an intentional tort claim. Plaintiffs cite the deposition testimony of Decedent's co-workers, showing that Decedent was exposed to various asbestos-containing products by Hopeman employees.[67] Plaintiffs cite to the Louisiana Workers' Compensation Act, the Walsh Healey Act, and the 1943 Louisiana Sanitary Code for support that Hopeman had notice of the hazards of asbestos.[68] Plaintiffs also cite testimony from former Hopeman executives establishing that Hopeman had knowledge of the dangers of asbestos in 1965.[69]

Viewing this evidence in the light most favorable to Plaintiffs, the evidence only suggests that Hopeman knew of the hazards of asbestos at the time of Decedent's exposure. However,

---

[64] *Id.* at 7.

[65] *Constanza v. Sparta Insurance Company*, No. 24-871, Rec. Doc. 375, at *10 (E.D. La. Nov. 19, 2025).

[66] *Id.* at 11 (quoting *Reeves*, 731 So. 2d at 213).

[67] Rec. Doc. 286 at 20–21.

[68] *Id.* at 19.

[69] *Id.* at 19–20.

Plaintiffs do not submit any evidence suggesting that Hopeman consciously intended to harm Decedent or that his mesothelioma was "inevitable or incapable of failing."[70] Even assuming that Hopeman had awareness that workplace exposure to asbestos was dangerous and that they should have utilized precautionary measures, Plaintiffs fail to bring forward sufficient evidence "whereby a reasonable juror could conclude that [Decedent's mesothelioma] was inevitable" such that it was substantially certain to result from Hopeman's conduct.[71] Accordingly, the Court finds Plaintiffs' claim against Hopeman "lies in the realm of negligence, not in the realm of intentional tort."[72] Thus, Liberty is entitled to summary judgment dismissing Plaintiffs' intentional tort claim against it as the insurer for Hopeman.

## B.      *Fraud and Concealment Claims*

Liberty, as the alleged insurer of Hopeman, moves for summary judgment on Plaintiffs' fraud and concealment claims. In Louisiana, the elements of a claim for fraud are: (1) a misrepresentation of a material fact, (2) made with the intent to deceive, and (3) causing justifiable reliance with resultant injury.[73] Therefore, in order to succeed on a tort claim for fraud, Plaintiffs must prove that (1) Hopeman misrepresented a material fact, (2) with the intent to deceive, and (3) caused justifiable reliance and resultant injury.[74] Under Louisiana law, fraud may result from silence or inaction.[75] However, "[i]n order to find fraud from silence or suppression of the truth,

---

[70] *Reeves*, 731 So. 2d at 213.

[71] *Becnel*, 2022 WL 3665085 at *4.

[72] *Cortez*, 597 F. Supp. 3d at 977.

[73] *Guidry v. U.S. Tobacco Co., Inc.*, 188 F.3d 619, 627 (5th Cir. 1999).

[74] *Id.*

[75] La. Civ. Code art. 1953 ("Fraud is a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other. Fraud may also

there must exist a duty to speak or disclose information . . . And while fraud may indeed result from a party's silence or inaction, mere silence or inaction without fraudulent intent does not constitute fraud. Fraudulent intent, or the intent to deceive, is a necessary and inherent element of fraud."[76]

The evidence presented by Plaintiffs does not support the assertion that Hopeman acted with fraudulent intent. Even if the evidence suggests that Hopeman was aware of the risks associated with exposure to asbestos products and did not warn Decedent of the hazards, these assertions alone "without fraudulent intent do[ ] not constitute fraud."[77] Because Plaintiffs have not produced any evidence to raise a genuine issue of material fact with respect to Hopeman's fraudulent intent, Liberty is entitled to summary judgment on Plaintiffs' fraud and concealment claims against Hopeman.

## C.    *Alter Ego Claims*

Liberty also moves for summary judgment on Plaintiffs' claims against Hopeman as the alleged alter ego of Wayne. Under Louisiana law, "[c]orporations function as distinct legal entities, separate from the individuals who own them, and their shareholders are not generally liable for the debts of the corporation."[78] The same principal of limited shareholder liability "applies where one corporation wholly owns another."[79] In certain circumstances Louisiana law permits "piercing the

---

result from silence or inaction.").

[76] *Terrebonne Concrete, LLC v. CEC Enters., LLC*, 2011-0072 (La. App. 1 Cir. 8/17/11), 76 So. 3d 502, 509, writ denied, 2011-2021 (La. 11/18/11), 75 So. 3d 464 (internal citations omitted).

[77] *Becnel*, 2022 WL 3665085 at *4.

[78] *Hollowell v. Orleans Regional Hosp. LLC*, 217 F.3d 379, 385 (5th Cir. 2000) (citing *Riggins v. Dixie Shoring Co.*, 590 So. 2d 1164, 1167 (La. 1991)).

[79] *Bujol v. Entergy Servs., Inc.*, 2003-0492 (La. 5/25/04), 922 So. 2d 1113, 1127.

corporate veil" on an alter ego basis.[80] This usually involves "situations where fraud or deceit has

been practiced by the shareholder acting through the corporation."[81] "Louisiana courts have

declared that the strong policy of Louisiana is to favor the recognition of the corporation's separate

existence, so that veil-piercing is an extraordinary remedy, to be granted only rarely."[82]

In *Riggins v. Dixie Shoring Co.* the Louisiana Supreme Court set forth the following factors

for courts to consider when determining whether to apply the alter ego doctrine:

> (1) commingling of corporate and shareholder funds;
> (2) failure to follow statutory formalities for incorporating and transacting corporate affairs;
> (3) undercapitalization;
> (4) failure to provide separate bank accounts and bookkeeping records; and
> (5) failure to hold regular shareholder and director meetings.[83]

Plaintiffs do not present any evidence to support application of the alter ego doctrine based on

these factors. Instead, Plaintiffs rely on *Green v. Champion Insurance Co.*,[84] and request that the

Court deem Hopeman and Wayne a single business enterprise under the eighteen-factor test laid

out in that case. *Green* set forth eighteen factors for determining whether affiliated entities

constitute a single business enterprise:

> (1) corporations with identity or substantial identity of ownership, that is, ownership of sufficient stock to give actual working control;
> (2) common directors or officers;
> (3) unified administrative control of corporations whose business functions are similar or supplementary;
> (4) directors and officers of one corporation act independently in the interest of that

---

[80] *Hollowell*, 217 F.3d at 385 (quoting *Riggins*, 590 So. 2d at 1168).

[81] *Id.* (quoting *Riggins*, 590 So. 2d at 1168).

[82] *Bujol*, 922 So. 2d at 1128 (quoting Glenn G. Morris and Wendell H. Holmes, *Louisiana Civil Law Treatise, Vol. 8, Business Organizations* § 32.02 (1999)).

[83] *Riggins*, 590 So. 2d at 1168.

[84] 577 So. 2d 249 (La. App. 1 Cir. 1991).

14

corporation;

(5) corporation financing another corporation;

(6) inadequate capitalization ("thin incorporation");

(7) corporation causing the incorporation of another affiliated corporation;

(8) corporation paying the salaries and other expenses or losses of another corporation;

(9) receiving no business other than that given to it by its affiliated corporations;

(10) corporation using the property of another corporation as its own;

(11) noncompliance with corporate formalities;

(12) common employees;

(13) services rendered by the employees of one corporation on behalf of another corporation;

(14) common offices;

(15) centralized accounting;

(16) undocumented transfers of funds between corporations;

(17) unclear allocation of profits and losses between corporations; and

(18) excessive fragmentation of a single enterprise into separate corporations.[85]

The court explained that the factors are "illustrative and [are] not intended as an exhaustive list," and "[n]o one factor is dispositive."[86]

Plaintiffs do not contest Liberty's evidence that: the companies were separately incorporated in different states at different times, the companies maintained separate accounting systems, the companies used separate checking accounts, the companies filed separate tax returns, and Wayne was profitable from its inception in 1922 to its dissolution in 1985.[87] Plaintiffs submit evidence showing that Wayne and Hopeman shared some officers, the businesses shared the same address for a period of time, Wayne primarily provided composite wallboards to Hopeman, and Wayne was a wholly-owned subsidiary of Hopeman at the relevant time.[88]

---

[85] *Id.* at 257–58.

[86] *Id.* at 258.

[87] Rec. Doc. 257-2 at 12–13.

[88] Rec. Doc. 286 at 4–5.

Louisiana appellate courts have declined to pierce the corporate veil under the single business enterprise framework where "[u]nlike in the *Green* case . . . there is simply no wrongdoing or other extraordinary circumstances present in the relationship between [the companies] that justifies disregarding the law of Louisiana corporations."[89] The Fifth Circuit has also instructed that single business enterprise veil-piercing is utilized "for the purpose of preventing fraud or achieving equity."[90] The evidence presented to support application of the single business enterprise doctrine in this case is "perfectly consistent with legitimate, efficient business operations, such as common control, common employees, officers, and directors, shared offices, and some form of centralized accounting."[91]

Plaintiffs have not shown that the single business enterprise theory should apply in this case. Only a few of the *Green* factors are present, and the factors at issue are all consistent with legitimate business practices. Plaintiffs have not pointed to evidence showing that any extraordinary circumstances, such as fraud or other wrongdoing, exist. Claims against Wayne and Hopeman are both pending before this Court. Therefore, considering Louisiana's strong public policy supporting corporations functioning as distinct legal entities, the Court finds that application of the alter ego doctrine is not appropriate in this case.

---

[89] *Johnson v. BP Prod. N. Am., Inc.*, No. 14-541, 2014 WL 5410646, at *4 (La. App. 4 Cir. 10/22/14), *writ denied*, 161 So. 3d 641 (La. 2015); *see also Spillman v. Gasco, Inc.*, No. 47,085 (La. App. 2 Cir. 5/16/12), 110 So. 3d 150, 159, *writ denied*, 99 So. 3d 652 (La. 2012) (rejecting single business enterprise liability where "the case present[ed] none of the normal grounds for piercing the corporate veil"); *Town of Haynesville, Inc. v. Entergy Corp.*, No. 42,019 (La. App. 2 Cir. 5/2/07), 956 So. 2d 192, 198–99 (reversing trial court's single business enterprise finding when there was no evidence of "wrongdoing or other extraordinary circumstances" affecting the plaintiff's dealings with a subsidiary within an affiliated group).

[90] *In re Ark-La-Tex Timber Co., Inc.*, 482 F.3d 319, 335 (5th Cir. 2007).

[91] *Bona Fide Demolition & Recovery, LLC v. Crosby Const. Co. of Louisiana*, 690 F. Supp. 2d 435, 445 (E.D. La. 2010).

### D.    Manufacturer Liability Claims

Liberty moves for summary judgment on the issue of whether Hopeman was a manufacturer of asbestos-containing products. A plaintiff can recover against a manufacturer by "proving that his injury was caused by a condition of the product existing at the time it left the manufacturer's control that rendered the product unreasonably dangerous in normal use."[92] Liberty argues that Hopeman did not manufacture any asbestos-containing products and was merely a subcontractor that provided furnished wallboard to Avondale. Plaintiffs assert that Hopeman was a manufacturer because it modified and fabricated the wallboards.

Plaintiffs argue that the Louisiana Products Liability Act ("LPLA") codified pre-existing jurisprudence. The Louisiana Supreme Court has found that the LPLA only has prospective effect.[93] Nevertheless, even assuming that the LPLA's definition of manufacturer applies, Plaintiff has not demonstrated that Hopeman was a manufacturer.

The LPLA defines a "manufacturer" as "a person or entity who is in the business of manufacturing a product for placement into trade or commerce."[94] The statute provides that "'[m]anufacturing a product means producing, making, fabricating, constructing, designing, remanufacturing, reconditioning or refurbishing a product."[95] Under the statute, manufacturer is also defined as: (1) "[a] person or entity who labels a product as his own or who otherwise holds

---

[92] *Becnel v. Lamorak Ins. Co.*, No. 19-14546, 2022 WL 3369163, at *2 (E.D. La. Aug. 16, 2022).

[93] *Gilboy v. Am. Tobacco Co.*, 582 So.2d 1263, 1264–65 (La. 1991).

[94] La. Rev. Stat. § 9:2800.53.

[95] *Id.*

17

himself out to be the manufacturer of the product;" and (2) "[a] manufacturer of a product who incorporates into the product a component or part manufactured by another manufacturer."[96]

Plaintiffs assert that Hopeman was a joiner at Avondale from decades and worked to install asbestos panels throughout ships constructed there. Plaintiffs contend that Wayne would manufacture panels for Hopeman's use, which Hopeman would then cut down aboard ships to install, producing asbestos dust. Multiple judges in this District, including the undersigned, have found that Hopeman cannot be held liable as a manufacturer based on these same facts.[97] Hopeman was a subcontractor that furnished a component part to Avondale, who was responsible for production of the ships. "To deem Hopeman a manufacturer would be to deem all joiners, carpenters, sheet rock installers, and other subcontractors as manufacturers of a finished product."[98] Plaintiffs have not demonstrated that this such an application is consistent with Louisiana law.

Accordingly,

---

[96] *Id.*

[97] *Constanza v. Sparta Insurance Company*, No. 24-871, Rec. Doc. 375, at *16 (E.D. La. Nov. 19, 2025); *Matherne v. Huntington Ingalls Inc.*, No. 22-2656, Rec. Doc. 327, at *9 (E.D. La. Jan. 24, 2024); *Adams v. Eagle, Inc.*, No. 21-694, Rec. Doc. 209, at *12 (E.D. La. Sept. 8, 2022); *Cortez v. Lamorak Insurance Company*, No. 20-2389, Rec. Doc. 1142 (E.D. La. Aug. 10, 2022).

[98] *Matherne*, No. 22-2656, Rec. Doc. 327, at *9.

**IT IS HEREBY ORDERED** that Liberty's motions for partial summary judgment[99] are **GRANTED**. Liberty is entitled to summary judgment finding that Hopeman is not a manufacturer under Louisiana law. Plaintiffs' claims for intentional tort, fraud, concealment and alter ego liability against Hopeman are also **DISMISSED WITH PREJUDICE.**

**NEW ORLEANS, LOUISIANA**, this  21st  day of June, 2026.

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[99] Rec. Docs. 257, 261.